THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. VINCENT LEONOR, PLAINTIFF IN ERROR.

Argued February 4, 1931—Decided May 18, 1931.

For the plaintiff in error, *Minturn & Weinberger*.

For the state, *Joseph L. Smith*, prosecutor of the pleas,. and *Joseph E. Conlon*, assistant prosecutor.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. Vincent Leonor, the plaintiff in error (hereinafter referred to as the defendant), was indicted for the murder of one Helen Leo on August 4th, 1930. The trial resulted in his conviction of murder in the first degree, without a recommendation of life imprisonment,. and he has sued out the present writ of error to review the validity of that conviction.

The first contention made before us as a ground for reversing this conviction is that the trial court committed prejudicial error in charging the jury with relation to the method of firing the gun with which the killing was done. The defense was that the killing was the result of an attempt

on the part of the defendant to commit suicide. The proofs showed that he had been living in adultery with his victim, who was a'married woman, and that some short time before the occurrence of the homicide she had severed her relations with him. At that time she resided with her husband in New York, and the defendant, apparently hoping that he might persuade the woman to resume those relations, telegraphed her, asking her to meet him at 205 Mulberry street, in Newark. She went there in response to this telegram, accompanied by a man named Benny LaScala, a deaf mute. The place on Mulberry street was a barber shop. They inquired there for the defendant, and learned that he was absent, but that he would be back again in an hour or so. They thereupon left the shop and walked around for an hour, and then returned to it. In the meantime the defendant had come to the shop, and, learning that the woman had been there and would return, went to his home and got a revolver, which he had stolen from his employer. The revolver was loaded. He then returned to the barber shop, met the woman in front of it and tried to persuade her to go with him to his room. This she refused to do. He then asked her to go to a restaurant with him for lunch. She also refused to do this. At that time her companion, LaScala, interrupted their talk and apparently attempted to assault the defendant, but was prevented from doing so by the woman. Just then Police Officer Maurer came upon the scene, and, apparently at LaScala's suggestion, arrested the defendant. He took him to the police box on the corner, the woman and her companion accompanying them. When they got there, and while the officer was using the call box, the defendant drew his revolver and fired four shots from it, one of which went through the hat of the officer and another of which struck the woman, killing her. The defendant's claim, as has been stated, and which he supported by his testimony, was that when he drew the revolver his intent was to shoot himself; that he drew the gun from his belt, put it up toward his head, and then someone grabbed him by the arm, and that he remembered nothing more; the reason for his alleged loss

of memory being that he had been so severely beaten by the
police officer that he was unconscious, and that, as a result
of this beating, he had been taken to the hospital, where he
remained in an unconscious condition until the afternoon
of the following day.

In charging the jury, the court, after commenting upon
the statement of the defendant relating to the shooting, and
which is above set forth, said, "now, we come to another
piece of physical evidence, and that is the gun itself. The
defendant says that he drew this gun from inside of his
coat, from his belt, put it up toward his head, and then some-
one grabbed his arm. He remembers nothing more. Now,
we have here four empty shells, four fired shells, which the
testimony is were found in the gun afterwards." The court
then proceeded to speak of the method which had to be used
in order to fire the gun, exhibiting it to the jury, and calling
attention to the fact that the pulling of the trigger would
not cause it to discharge unless pressure was put upon the
back of the gun at the same time. The contention is that
it was error for the court to attempt to explain to the jury
the method of firing the gun, because of the fact that no
testimony had been offered to prove it. We consider the con-
tention on the part of the defendant that this action of the
court constituted legal error to be without merit. The gun
itself had been admitted in evidence, and we perceive nothing
objectionable in the calling to the attention of the jury the
method which, as the court considered, was required by its
construction to be used in causing its discharge, leaving it
to the jury, as the court did, to determine from an inspection
of the gun itself whether that view was sound or not.

The second contention made on behalf of the defendant
is that the court committed prejudicial error in that part of
its charge relating to what the hospital record, which the
proofs showed had been made up almost immediately after
the defendant's admission thereto, disclosed. The state had
offered in evidence an alleged confession of the defendant, in
which his guilt was admitted, supplemented by proof that it
had been made within an hour after his admission to the

hospital. The defendant testified that at the time the confession was said to have been made he was unconscious. The court stated, in referring to this claim of the defendant, "we find another piece of physical evidence, and that is the hospital record." The court then read the record, which had been offered in evidence by the defendant, and which showed that at the time it was made the defendant had stated to the party making it the name of his employer and the residence of the latter; and further showed that he was then "well oriented." We see nothing objectionable in this part of the charge of the trial court. In view of the fact that the hospital record was put in evidence, not by the state but by the defendant himself, the court was entirely justified in referring to the facts disclosed in that record.

It is next contended that the court committed prejudicial error in making the following statement in the charge of the jury: "The defendant, on the other hand, asks you for a verdict, but I will not attempt to say what he does ask for. I will read you what his counsel did say: 'I want to thank you gentlemen in advance for the verdict that is going to give Vincent Leonor his chance to go back to those distant isles some day and be with his friends and relatives and those he loves, and not send him to the electric chair.'" We have not considered the question as to whether or not there is anything legally objectionable in this statement on the part of the trial court. The legal propriety of it is not challenged by any assignment of error or reason for reversal, and it is entirely settled that an alleged trial error which is not so challenged will not be considered by a court of review. *State* v. *Shutts,* 69 *N. J. L.* 206; *Hitt* v. *Alberts,* 75 *Id.* 537, 541; *Diamond Mills Paper Co.* v. *Leonard Hygiene Ice Co.,* 95 *Id.* 540; *State* v. *Grace,* 98 *Id.* 341.

The next ground upon which we are asked to reverse the conviction is that the court improperly admitted in evidence an alleged confession made by the defendant to Officer Garrigan shortly after he was taken to the hospital. In that confession the defendant stated, among other things, that while they were talking—that is, the police officer and the

woman and her companion—at the police call box, "I realized that I had my gun, and also realized that I had the gun for the purpose of killing Helen. I moved my right hand slowly into my pants at the belt, and, pulling it out slowly, aimed the revolver at Helen and fired one shot, then fired a few in wild directions. I wanted to save one shot to kill myself, which I did, so I placed the gun at my head. Just then the police officer grabbed my hand and took my revolver away." The proofs on the part of the state showed that the confession was made after the defendant had been taken to the hospital and had been there for some little time; that he was then conscious; that the statement was a voluntary one, made without any threats or promises to the defendant; that it was the result of a conversation between the defendant and the officer who took it; and that after it was taken down in writing it was read to the defendant, and he then signed it. The defendant denied this, stating that he was unconscious at the time the confession was alleged to have been made and that the signature attached to the paper was not written by him. This case comes up for review under the one hundred and thirty-sixth section of our *Criminal Procedure* statute, and one of the reasons for reversal filed in this court raises the question of the legal propriety of admitting the confession in evidence. The right of the defendant to have this question determined on review is conferred by the section of the statute referred to, and this court is, therefore, called upon to determine whether or not the evidence relating to the making of the confession is sufficient in weight to justify the finding of the trial court that it was, in fact, made by the defendant, and was made voluntarily. *State* v. *Morehous,* 97 *N. J. L.* 285; *State* v. *Genese,* 102 *Id.* 134. In the performance of this duty we have carefully examined the evidence submitted both on the part of the state and on the part of the defendant, and our consideration thereof has entirely satisfied us that the finding of the trial court that the confession was made, and was made voluntarily, is supported by the clear weight of the testimony, and that, consequently, it was properly admitted in evidence.

The next ground urged for reversal is that the trial court erred in sustaining the state's objection to the following question put by the defendant's counsel to one Dr. Long, a witness called by the defense: "If the patient had injuries to his head and had a temperature of one hundred and one, would you think that he had full control of his senses?" The basis of the state's objection was that, in order to make the testimony competent, the question ought to disclose the character of the injuries which it was claimed the defendant had received to his head. The court considered that the question should so specify, and offered to permit it to be amended in this respect. Counsel for the defendant, however, did not see fit to avail themselves of this offer. In our opinion, the objection made to the question by the prosecutor of the pleas was a valid one, and the question in the form in which it was put was properly excluded.

Lastly, it is contended that the method of interpreting the testimony given by certain deaf mutes, who were called by the state, was very inadequate and insufficient and worked unfairly and prejudicially to the defendant. This contention is not made the basis of any assignment of error or ground for reversal, and, therefore, like the third contention made on behalf of the defendant, will not be considered by this court.

The conviction under review will be affirmed.

*For affirmance*—The Chief Justice, Trenchard, Parker, Campbell, Lloyd, Case, Bodine, Daly, Donges, Van Buskirk, Kays, Hetfield, Dear, Wells, JJ. 14.

*For reversal*—None.